# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JUANDA LYNN JORDAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 18 C 4327 |
| ) | |
| MARSH USA, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Juanda Lynn Jordan has sued her former employer, Marsh USA, Inc., for interfering with her exercise of rights under the Family and Medical Leave Act (FMLA) and terminating her in retaliation for exercising her FMLA rights. Marsh has moved for summary judgment on Jordan's claims. For the reasons stated below, the Court denies Marsh's motion.

## Background

The following facts are undisputed except where otherwise indicated. Marsh is an insurance brokering and risk management company. Jordan worked for Marsh as an insurance specialist. On August 15, 2017, Jordan's physician, Dr. Sachin Dixit, diagnosed her with anxiety, stress, and hypertension. That day, Jordan sent a text message and phoned her supervisor at Marsh to inform him that she would need to miss work until August 28, 2017 for medical reasons.

The Leave Management team of Marsh's parent company administers leaves of

absence for Marsh's employees.  Leave Management works with a third-party administrator, The Hartford, on the leave process.  The Hartford reviews and approves leaves of absence on behalf of Marsh.  Leave Management is responsible for notifying Marsh's employees about The Hartford's decisions.

On August 16, 2017, Leave Management sent Jordan a letter with information about the company's benefits and how to access them.  The letter discussed the availability of FMLA leave and the procedures for obtaining it.  After receiving the letter, Jordan understood that the company's policy required her to submit a certification from her physician regarding her medical leave.

At a medical appointment on August 28, 2017, Jordan learned from her doctor that she would need to continue to stay out on leave.  She testified during her deposition that she contacted her supervisor and Leave Management, which advised that it would send her documentation for her doctor to complete.  Leave Management also told her to check in with her supervisor weekly, which Jordan did.

Leave Management provided Jordan with a certification form, which Dr. Dixit completed and signed on August 28, 2017.[1]  On the form, Dr. Dixit indicated that Jordan would be incapacitated for a single, continuous period due to her medical condition. Part of the fifth question asked him to "estimate the beginning and ending dates for the periods of [the employee's] incapacity."  Ex. 2 to Pl.'s Stat. of Add'l Facts, dkt. no. 61-1, at 44.  In response, Dr. Dixit listed the dates of August 15, 2017 to September 30, 2017.

---

[1] The parties dispute whether Dr. Dixit's staff sent the form to Leave Management on or after August 28, 2017 or whether Jordan sent the form to Leave Management and, if so, when she submitted it.

2

At The Hartford's request, Dr. Dixit also completed attending physician statements relating to Jordan's medical conditions and her need for continuous leave. The parties dispute, and it is unclear from the record, whether Jordan or a member of Dr. Dixit's staff submitted these statements to The Hartford, how that person submitted them, and when The Hartford received them.[2] On August 16, 2017, Dr. Dixit completed an attending physician statement in which he indicated that Jordan's expected "[r]eturn to [w]ork" date was October 1, 2017. *Id.* at 48. On September 25, 2017, Dr. Dixit completed another attending physician statement in which he indicated that her expected return date was "unknown." *Id.* at 53.

On September 29, 2017, The Hartford sent Jordan a letter stating that it had not received "necessary medical information" from Jordan's doctor and thus was "unable to completely evaluate" her claim for benefits. Ex. 3 to Def.'s Stat. of Undisputed Material Facts (SUMF), dkt. no. 46-1, at 108. As a result, the letter indicated, The Hartford had closed Jordan's file. The letter did not state whether The Hartford had received any medical documentation relating to Jordan's leave or, if it had received documentation, what more it needed. On several occasions before sending the September 29 letter, The Hartford had orally advised Jordan either that it was missing her medical records (as Jordan contends) or that it needed additional medical records (as Marsh contends).

In September and October, Jordan called The Hartford and Leave Management multiple times to discuss the status of her leave. On a call to Leave Management on September 26, 2017, she stated that she expected to need leave until at least October

---

[2] Marsh neither admits nor denies that The Hartford received the attending physician statements. At this stage, the Court views the evidence in the light most favorable to Jordan and thus will proceed on the basis that The Hartford received these forms.

3

9, 2017. Jordan spoke to Leave Management about her need for leave as late as October 30, 2017; she testified that an employee of Leave Management told her that day that she had not received a paycheck because she was on FMLA leave. Marsh does not dispute that Jordan spoke to someone from Leave Management that day but contends that no one from Leave Management told Jordan she was approved for FMLA leave extending through October.

The parties also dispute whether Jordan or her doctor submitted all necessary documentation to The Hartford and/or Leave Management. The parties agree that Leave Management and The Hartford repeatedly told Jordan that The Hartford was missing some required documentation, but it is unclear from the record what documentation it was missing. Jordan contends that she tried to provide the documentation needed to support her FMLA leave. She testified that went to Dr. Dixit's office more than fifteen times to inform him that Leave Management and/or The Hartford had not received the necessary documentation; the doctor's staff faxed to The Hartford copies of the documentation it requested, including her medical records; she personally faxed some of the requested information to The Hartford; and she placed several phone calls to Leave Management and/or The Hartford to confirm its receipt of the faxes.

Valerie Bautista, a management analyst on the Leave Management team, testified that on October 20, 2017 she sent a letter to Jordan via Federal Express. This letter is a point of contention between the parties. It stated that The Hartford was "unable to obtain appropriate medical documentation" from Jordan's health care provider regarding her leave. Ex. 3 to Def.'s SUMF, dkt. no. 46-1, at 110. Like the September 29 letter, this letter did not state whether Leave Management or The

4

Hartford had received any medical documentation relating to Jordan's leave or, if they had received such documentation, what more they needed.  The letter said that if Jordan did not provide medical documentation by October 27, 2017 or return to work on or before the next day on which she was scheduled to work, her employment would be terminated, and she would be considered to have voluntarily resigned from her position, pursuant to Marsh's short-term disability policy.  The letter contained no reference to the FMLA.

Jordan contends that she did not receive the October 20, 2017 letter until after her termination.  She testified that she received a Federal Express package on October 23, 2017 but that it contained another copy of the September 29, 2017 letter from the Hartford, not the October 20, 2017 letter from Leave Management.  Marsh disputes this and asserts that its records show that the package should have contained the October 20, 2017 letter.

On October 31, 2017, Marsh decided to terminate Jordan on the ground that she had failed to provide the necessary medical documentation and had not returned to work, as required by Marsh's internal policy and as described in the October 20, 2017 letter.  Dr. Dixit had never cleared Jordan to return to work.  According to testimony from a member of the human resources team, the managers who made the termination decision understood, based on e-mails from Leave Management, that The Hartford had not received the requisite medical information from Jordan or her doctor.[3]

On the same day as Jordan's termination, The Hartford sent her a letter

---

[3] The parties dispute the accuracy of these e-mails, whether The Hartford had received the necessary medical documentation, and whether The Hartford was still in the process of reviewing Jordan's claim.

5

indicating that her FMLA leave was approved from August 15, 2017 to September 30, 2017. The letter stated that The Hartford had "reviewed the medical information submitted on October 31, 2017," although it is not clear what this meant. Ex. 8 to Def.'s SUMF, dkt. no. 46-1, at 210. The letter did not state that Jordan's request for leave after that date had been denied.

Jordan sued Marsh for race discrimination, retaliation for making a complaint about race discrimination, and violations of the FMLA. Marsh moved for summary judgment. Jordan then moved to voluntarily dismiss the race discrimination and retaliation claims, and the Court granted that motion. Jordan's remaining claims are count 4, alleging interference under the FMLA, 29 U.S.C. § 2615(a)(1), and count 5, alleging retaliation under the FMLA, *Id.* §§ 2615(a)(2), 2615(b).

**Discussion**

"Summary judgment is proper where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Richardson v. Chi. Transit Auth.*, 926 F.3d 881, 886 (7th Cir. 2019) (internal quotation marks omitted). In considering a motion for summary judgment, the Court construes all facts and draws all reasonable inferences "in favor of the party against whom the motion under consideration was filed." *Id.*[4] Summary judgment is inappropriate "if the evidence is

---

[4] Marsh has objected to many of Jordan's responses to Marsh's Local Rule 56.1(b)(3)(C) statements of fact on the grounds that they set forth additional facts, do not include proper citations to the record, or are argumentative. Factual assertions and denials in Local Rule 56.1 statements may not set forth additional facts, must be supported by specific citations to the record, and may not be argumentative. *See* N.D. Ill. LR 56.1(b)(3)(B & C*)*; *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000). The Court has not considered any assertions or denials that contain additional facts, are unsupported by record cites, or contain improper argument or legal conclusions.

6

such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Under the FMLA, an eligible employee suffering from a serious health condition is entitled to twelve workweeks of leave during each twelve-month period.  *Guzman v. Brown County*, 884 F.3d 633, 638 (7th Cir. 2018) (citing 29 U.S.C. § 2612(a)(1)(D)).  The FMLA "makes it unlawful for an employer to interfere with an employee's attempt to exercise FMLA rights or to retaliate against employees who exercise their FMLA rights."  *Id.* (citing 29 U.S.C. § 2615).

**A.  FMLA interference claim**

Jordan alleges that Marsh interfered with her attempt to exercise her FMLA rights by terminating her on October 31, 2017 for taking FMLA leave.  To prevail on an FMLA interference claim, an employee must show that: "(1) she was eligible for the FMLA's protections, (2) her employer was covered by the FMLA, (3) she was entitled to leave under the FMLA, (4) she provided sufficient notice of her intent to take leave, and (5) her employer denied her FMLA benefits to which she was entitled."  *Id.*  Marsh contends that its termination of Jordan did not deny her benefits to which she was entitled because she did not submit medical documentation showing her need for FMLA leave after September 30, 2017.  Marsh says that for this reason, Jordan was not approved for FMLA leave or exercising her FMLA rights at the time of the termination.[5]

---

[5] The Court declines to address Marsh's argument that Jordan's interference claim fails because she could not have returned to work at Marsh within twelve weeks.  Marsh forfeited that argument by developing it for the first time in its reply brief.  *See, e.g., Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009).  Marsh mentioned this point in its opening brief only in passing, in a one-sentence, small-type footnote that did not

7

"Once an employee informs his employer of his probable need for medical leave, the FMLA imposes a duty on the employer to conduct further investigation and inquiry to determine whether the proposed leave in fact qualifies as FMLA leave." *Burnett v. LFW Inc.*, 472 F.3d 471, 480 (7th Cir. 2006). Toward that end, when an employee initially provides notice of FMLA leave, her employer may request certification from her healthcare provider. 29 U.S.C. § 2613(a); *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 843 (7th Cir. 2014). A certification for continuous leave is sufficient if it provides the date on which the serious health condition began, "the probable duration of the condition," appropriate medical facts about the condition, and "a statement that the employee is unable to perform the functions" of her position. 29 U.S.C. § 2613(b)(1)-(4).

It is undisputed that Marsh requested a medical certification from Jordan's doctor and that her doctor submitted a certification stating that Jordan would be unable to work from August 15, 2017 through September 30, 2017.[6] Although Marsh initially contended that Jordan's certification was insufficient or incomplete, it eventually granted her FMLA leave for that period "on the basis of the certification and thus by its actions approved the certification." *Hansen*, 763 F.3d at 840. Marsh argues, however, that Jordan was not approved for leave after September 30, 2017 because she did not submit medical documentation supporting her need for leave after that date. Jordan argues that she tried to provide Marsh with documentation and kept Marsh informed

---

develop the point sufficiently to preserve it. *See McCottrell v. White*, 933 F.3d 651, 670 (7th Cir. 2019) (perfunctory and undeveloped arguments are waived).

[6] Throughout this opinion, references to Marsh include its Leave Management team and its third-party leave administrator, The Hartford, unless otherwise indicated.

8

about the status of her leave. She asserts that Marsh never requested additional documentation relating to the extension of her leave and told her only after her termination that she was not approved for leave after September 30, 2017.

The duration of leave estimated in a medical certification does not set a hard limit on the length of an employee's FMLA leave. *Id.* at 843. Rather, where an employee's absences exceed the duration of incapacity estimated in her medical certification, an employer may not fire her without first allowing her "to cure the deficiency." *Id.* at 842. If the "[c]ircumstances described by the previous certification," including the duration of the leave, "have changed significantly," the employer may request a recertification. 29 C.F.R. § 825.308. An employer's recertification request relating to absences that exceed the estimated duration of leave must be distinct from its attempts to confirm a prior certification. *See Hansen*, 763 F.3d at 842.

In *Hansen*, a question on an employer's medical certification form asked a doctor to estimate the duration of an employee's incapacity. *Id.* at 840. The employer terminated the employee for absences exceeding that estimated duration. *Id.* at 835. The Seventh Circuit found that the certification's estimated duration of leave would permit a reasonable jury to find that the employee was still entitled to FLMA leave when he was terminated. *Id.* at 845. The court noted that estimates are not absolutes and pointed out that employers may follow the process provided in the FMLA's recertification regulation to request information about employees' absences in excess of the estimated duration of leave. *Id.* at 842–43. The court in *Hansen* also found that the employer's attempts to confirm a prior certification did not constitute a recertification request because the employer sought information about ongoing treatment as opposed to the

duration of the employee's leave. *Id.* at 842.

As in *Hansen*, The Hartford's certification form asked for the physician to estimate the duration of leave. Specifically, the form's fifth question called on Dr. Dixit to "estimate the beginning and ending dates for the periods of incapacity." Ex. 2 to Pl.'s Stat. of Add'l Facts, dkt. no. 61-1, at 44. In mid-September, at The Hartford's request, on Dr. Dixit completed an attending physician's statement in which he indicated that Jordan's expected "[r]eturn to [w]ork" date was "unknown." *Id.* at 53. Viewing this evidence in the light most favorable to Jordan, a reasonable jury could find that Dr. Dixit's certification and other documentation supported Jordan's need for leave through October 31, 2017, when Marsh terminated her, and thus that Marsh interfered with Jordan's attempt to exercise her FMLA rights by firing her when she was taking FMLA leave.

To the extent Marsh argues that Jordan failed to provide medical documentation substantiating her need for leave after September 30, 2017, there is a genuine factual dispute regarding whether Marsh's requests for such documentation constituted a request for recertification. As indicated above, an employer may request recertification if the "[c]ircumstances described by the previous certification," including the duration of the leave, "have changed significantly." 29 C.F.R. § 825.308. Marsh sought medical documentation from Jordan and her doctor, but it is not clear from the evidence before the Court what documents Marsh sought. If Marsh did not seek information about the extended duration of Jordan's leave, then, as in *Hansen*, a reasonable jury could find that Marsh's requests for information related only to the initial certification and did not constitute a recertification request.

Even if Marsh did request a recertification, a reasonable jury could find that it failed to follow the proper procedures for doing so. A recertification request may be made orally, but an "employer must give notice of a requirement for certification each time a certification is required." 29 C.F.R. § 825.305(a). Additionally, "[i]f a certification is incomplete or insufficient, the employer must provide the employee an opportunity to cure the deficiency." *Hansen*, 763 F.3d at 837 (employer could not terminate an employee for absences exceeding the estimated duration of his leave without allowing him an opportunity to extend the duration of incapacity provided in his certification). "[W]henever the employer finds a certification [to be] incomplete or insufficient," the employer must advise the employee and "state *in writing what additional information is necessary* to make the certification complete and sufficient." 29 C.F.R. § 825.305(c) (emphasis added).

As indicated earlier, there is a genuine factual dispute regarding whether Marsh notified Jordan that she needed to submit an additional certification or other documentation specifically showing her need for leave beyond September 30, 2017. Additionally, a reasonable jury could find that Marsh failed to advise Jordan in writing what additional information she needed to provide to make her certifications complete and sufficient. On September 29, 2017, The Hartford sent Jordan a letter in its role as the administrator of Marsh's short-term disability plan stating that The Hartford had not received "necessary medical information" from Jordan's doctor, without describing what additional information was needed. Ex. 3 to Def.'s SUMF, dkt. no. 46-1, at 108. Another letter dated October 20, 2017 from Marsh stated that The Hartford "has been unable to obtain appropriate medical documentation" but again failed to state what

11

additional medical documentation it needed. *Id.* at 110. Jordan testified that The Hartford told her it was missing medical documents from her doctor and that she learned which specific documents were missing only by calling the Hartford. If Marsh failed to inform Jordan *in writing* that her certification was incomplete or insufficient and what additional information she needed to provide, then it did not provide her with the required opportunity to cure any deficiencies in her certification, which a jury reasonably could find amounted to an interference with Jordan's FLMA rights.[7]

Accordingly, the Court denies Marsh's motion for summary judgment on Jordan's FMLA interference claim.

**B.    FMLA retaliation claim**

Jordan also alleges that Marsh violated the FMLA's retaliation prohibition by terminating her for exercising her FMLA rights. To prevail on a retaliation claim under the FMLA, a plaintiff must show that: (1) she engaged in a protected activity; (2) her employer "took adverse action" against her; and (3) "the protected activity caused the adverse action." *Freelain v. Village of Oak Park*, 888 F.3d 895, 901 (7th Cir. 2018). The Court considers "the evidence as a whole" and asks "whether a reasonable jury could draw an inference of retaliation." *King v. Ford Motor Co.*, 872 F.3d 833, 842 (7th Cir. 2017).[8]

---

[7] Given this conclusion, the Court need not address Jordan's argument that the October 20, 2017 was deficient for its failure to mention the FMLA.

[8] Although the parties frame their arguments using direct and indirect methods of proof, the Seventh Circuit has recently cautioned courts about applying that framework in employment cases. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) ("Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does

12

To survive summary judgment on this claim, Jordan must "point to evidence supporting a reasonable inference that she was fired because she took protected leave." *Tibbs v. Admin. Office of the Illinois Courts*, 860 F.3d 502, 505 (7th Cir. 2017). "To succeed on a retaliation claim, the plaintiff does not need to prove that retaliation was the *only* reason for her termination; she may establish an FMLA retaliation claim by showing that the protected conduct was a substantial or motivating factor in the employer's decision." *Goelzer*, 604 F.3d at 995 (internal quotation marks omitted).

Marsh does not dispute that it took adverse employment action against Jordan when it terminated her on October 31, 2017. With respect to the first element of Jordan's retaliation claim, Marsh contends that Jordan was not engaged in protected activity when it terminated her because she was not approved for FMLA leave after September 30, 2017. As discussed above, however, there is a genuine factual dispute regarding whether Marsh should have approved Jordan's FMLA through the date of her termination.

Marsh further argues that, regardless of whether Jordan was approved for FMLA leave at the time of her termination, she cannot establish the third element of her retaliation claim because there is no evidence that it terminated her for taking FMLA leave. Rather, Marsh asserts, it fired Jordan for violating the company's leave policy by "failing to submit her medical documentation [in support of her need for leave after

---

so, or the 'indirect' evidence."). The Seventh Circuit has reiterated this caution in the context of FMLA retaliation claims. *See Freelain*, 888 F.3d at 905 ("We repeat our caution that courts should not discard circumstantial evidence simply because it does not provide direct proof of unlawful intent."). Accordingly, the Court considers the evidence in a manner consistent with *Ortiz.*

September 30, 2017] or return to work."  Def.'s Mem. in Supp. of Mot. for Summ. J., dkt. no. 44, at 15.  An employer may require its employees to comply with its "notice and procedural requirements for requesting leave."  29 C.F.R. § 825.302(d).  "Where an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied."  *Id.*; *see also Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 770 (7th Cir. 2008) (an employer's termination of an employee was lawful where its policies permitted it to terminate employees for absenteeism and the employee did not demonstrate FMLA entitlement for her absences).  Marsh argues that because it honestly believed that Jordan had not submitted the requisite paperwork when it fired her for failing to comply with its policy, its termination of her did not constitute prohibited retaliation.

An employer may be entitled to summary judgment on a retaliation claim where, based on a mistaken belief, it terminated an employee for reasons unrelated to the employee's protected activities.  *See Scruggs v. Carrier Corp.*, 688 F.3d 821, 827 (7th Cir. 2012); *see also Tibbs*, 860 F.3d 502, 506 (7th Cir. 2017) (pretextual reasons used to cover an employer's true retaliatory motives involve "more than just faulty reasoning or mistaken judgment on the part of the employer").  Yet an employer is not entitled to summary judgment where it based its motivation for terminating an employee, "or at least a key component of it," on a mistaken belief that the employee was ineligible for the FMLA's protections.  *Burnett*, 472 F.3d at 482.

A comparison of two Seventh Circuit cases is instructive.  In *Burnett*, an employer mistakenly believed an employee had not provided notice of his medical

14

condition, denied him FMLA leave based on that mistaken belief, and terminated him for insubordination after he left work to take leave. *Id.* at 482. The Seventh Circuit found that a genuine factual dispute existed regarding the employer's motivation for the termination because a key component of the alleged insubordination was the employee's protected activity: his request for FMLA leave and his taking of that leave. *Id.* By contrast, in *Scruggs*, an employer terminated an employee because it had an honest, albeit perhaps mistaken, belief that the employee was not using his FMLA leave for its intended purpose of enabling him to care for his ailing mother. *Scruggs*, 688 F.3d at 827. In concluding that summary judgment was appropriate, the Seventh Circuit reasoned that *Burnett* did not apply because the reason for the employee's termination—his supposed misuse of his leave—"was the not same as his protected activity." *Id.* (noting that the timing of the termination—only after the employer "received evidence of potential misconduct"—supported the conclusion that it was unrelated to his taking FMLA leave). *See also Daugherty v. Wabash Ctr., Inc.*, 577 F.3d 747, 752 (7th Cir. 2009) (an employer was entitled to summary judgment where it honestly believed that it fired an employee for poor performance and misconduct rather than his taking of FMLA leave).

As in *Burnett*, a reasonable jury could find that Jordan's exercise of her FMLA rights was "at least a key component" of Marsh's reason for terminating her. *Burnett*, 472 F.3d at 482. If Jordan was entitled to be on FMLA leave on October 31, 2017—as a jury reasonably could find—her absence from work because she was on that leave is a key act that Marsh labeled as in violation of its policy. If she had not exercised her right to take leave—i.e., if she had returned to work—then Marsh could not have found

15

her to be in violation of its policy.  Therefore, applying *Burnett*, there is a genuine dispute regarding whether Marsh's termination of Jordan was truly motivated by her failure to follow its policy.

The parties dispute whether this case is analogous to *Smith v. Concentra, Inc.*, 240 F. Supp. 3d 778 (N.D. Ill. 2017).  In *Smith*, an employer terminated an employee who failed to comply with the employer's requirement to contact the employer or return to work after the expiration of her FMLA leave.  *Id.* at 788.  Although the employee claimed she never received the letter informing her of that requirement, the court granted the employer's motion for summary judgment because the employer terminated the employee for her violation of its policy, not in retaliation for her taking FMLA leave. *Id.*  *Smith* is distinguishable from this case because there the parties agreed that the employee's FMLA leave had expired.  *Id.* at 787.  Therefore, the employee's failure to return to work and her corresponding violation of the company's policy could not be attributed to her exercise of her FMLA rights.  As discussed above, because Jordan's entitlement to FMLA leave is genuinely disputed and her taking of leave is a key component of her alleged violation of Marsh's policy, summary judgment is inappropriate.

Accordingly, based on the evidence as a whole, Marsh is not entitled to summary judgment on Jordan's FMLA retaliation claim.

### Conclusion

For the foregoing reasons, the Court denies Marsh's motion for summary judgment [dkt. no. 35].  The case is set for a status hearing on November 7, 2019 at 9:30 a.m. for the purpose of setting a trial date and discussing the possibility of

settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: November 1, 2019